UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DOUGLAS GILDING,

    Petitioner,

v.                                       CASE NO. 6:10-cv-1727-Orl-31DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner, through counsel, initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the amended petition (Doc. Nos. 7 & 11),[1] the Court ordered Respondents to show cause why the relief sought in the amended petition should not be granted. Thereafter, Respondents filed a response to the amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 30). Petitioner filed a reply to the response (Doc. No. 40).[2]

Petitioner alleges six claims for relief. However, as discussed hereinafter, the Court finds that the petition is untimely and must be denied.

---

    [1]The Court notes that two separate amended petitions were filed on December 9, 2010 (Doc. Nos. 7 & 11). The second document filed appears to be a duplicate.

    [2]Two replies were filed by counsel for Petitioner on July 8, 2011 (Doc. No. 41). The second document appears to be a duplicate.

I.      *Procedural History*

Petitioner was indicted on July 1, 1997, for one count of first degree felony murder (count one), one count of conspiracy to commit murder (count two), one count of robbery with a firearm (count three), and two counts of causing bodily injury during the commission of a felony (counts four and five) (App. A at 12-14). After a jury trial, Petitioner was convicted as charged. *Id.* at 292-96. The court sentenced Petitioner to life imprisonment for count one, to a five-year term of imprisonment for count two, and to thirty-year terms of imprisonment for counts three, four, and five, with the sentences for counts two through five to run consecutively to the sentence for count one (App. A at 309-15). Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam* on July 18, 2000 (App. G at 75).

On July 17, 2001, Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel with the Fifth District Court of Appeal (App. H at 1-56).[3] On October 1, 2001, the appellate court denied the petition without discussion. *Id.* at 176. Petitioner moved for rehearing, and the appellate court denied the motion on November 13, 2001. *Id.* at 177-81.

On July 18, 2002, Petitioner filed a motion for post-conviction relief pursuant to

---

[3]This is the filing date under the "mailbox rule." *See Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000) ("[W]e will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if that [sic] the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date."). All further references to the filing date of pleadings by Petitioner shall be the filing date under the mailbox rule, unless otherwise noted.

Florida Rule of Criminal Procedure 3.850, through counsel, in which he alleged nine grounds for relief (App. I at 12-48).[4] The trial court summarily denied Petitioner's claims. *Id.* at 93-97. Petitioner did not immediately appeal. On September 12, 2003, Petitioner filed, through counsel, a petition for belated appeal (App. J at 1). The Fifth District Court of Appeal granted the petition on October 15, 2003. *Id.* at 16. On January 27, 2004, the appellate court affirmed *per curiam* (App. K at 69). Mandate was issued on February 13, 2004. *Id.* at 70. Petitioner filed a petition for writ of certiorari with the Supreme Court of the United States (App. L at 63). The Court denied the petition for writ of certiorari on October 4, 2004. *Id.* at 174.

On December 5, 2006, Petitioner filed a second Rule 3.850 motion for post-conviction relief through counsel alleging a claim of newly discovered evidence based on an affidavit of co-defendant Juan Smallwood ("Smallwood"), who attested that Petitioner was actually innocent of the crimes (App. M at 1-15).[5] The trial court denied the motion as successive and untimely (App. N at 304-06). Additionally, the trial court found that Petitioner had not diligently pursued finding evidence to support his actual innocence claim; the court noted that Smallwood was Petitioner's co-defendant, therefore he was aware of his existence and

---

[4]Pursuant to Florida law, when a petitioner has retained counsel, a Rule 3.850 motion is deemed filed on the date counsel filed the motion with the trial court. *See Davis v. State*, 56 So. 3d 860, 860 (Fla. 1st DCA 2011) (citing Fla. R. Civ. P. 1.080(e)).

[5]There were five co-defendants in this case: Petitioner, Smallwood, Michael Stafford ("Stafford"), John Fisher ("Fisher"), and Thomas Chenault ("Chenault"). Petitioner, Smallwood, and Chenault received life sentences for first-degree felony murder. Fisher received a five-year term of imprisonment as an accessory after-the-fact. Stafford received a fifteen-year term of imprisonment for the lesser included offense of manslaughter.

could have contacted him within the two-year time limitation for filing a Rule 3.850 motion. *Id.* On September 21, 2010, the Fifth District Court of Appeal affirmed *per curiam* (App. O at 23). Mandate was issued on November 12, 2010. *Id.* at 43. The instant action was filed on November 19, 2010 (Doc. No. 1).

## II.    *Petitioner's Habeas Corpus Petition Is Untimely*

Pursuant to 28 U.S.C. § 2244:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> > (A)  the date on which the judgment became final by the consideration of direct review or the expiration of the time for seeking such review;
> >
> > (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In the present case, the state appellate court entered its affirmance of Petitioner's convictions and sentences on July 18, 2000. Petitioner then had ninety days, or through October 16, 2000, to petition the Supreme Court of the United States for a writ of certiorari. *See* Sup. Ct. R. 13(3).[6] Thus, under § 2244(d)(1)(A), the judgment of conviction became final on October 16, 2000, and Petitioner had through October 16, 2001, absent any tolling, to file a federal habeas petition.

Under § 2244(d)(2), the one-year period would be tolled during the pendency of any "properly filed" state post-conviction proceedings. Petitioner filed a petition for writ of habeas corpus on July 17, 2001. A total of 274 days of the one-year limitations period elapsed before Petitioner filed this petition. The time for filing a federal habeas petition was tolled from July 17, 2001, through November 13, 2001, the date the appellate court denied rehearing. Petitioner had 91 days remaining of the one-year limitations period, or until February 12, 2002, in which to file his federal habeas petition. Petitioner's initial habeas petition was not filed until November 19, 2010, and therefore, was untimely filed.

---

[6]The Supreme Court of the United States recently held in *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-56 (2012), that if a prisoner does not pursue review to the Supreme Court of the United States or to the State's highest court, he is not entitled to an additional 90 days for filing a petition for writ of certiorari. Although Petitioner did not seek review with the Supreme Court of Florida, the Court finds that *Gonzalez* is distinguishable because in Florida, the Supreme Court of Florida does not have jurisdiction to review a district court's *per curiam* decision on direct appeal. *Jackson v. State*, 926 So. 2d 1262, 1265 (Fla. 2006). Thus, because filing a petition for writ of discretionary review with the Supreme Court of Florida would have been futile, it was not necessary in order to receive 90 additional days for the time in which Petitioner could have filed a petition for writ of certiorari with the Supreme Court of the United States.

The Court is aware that Petitioner filed two Rule 3.850 motions in the state court. However, because the one-year period expired before Petitioner initiated those actions, the tolling provision of section 2244(d)(2) does not apply. *See Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) (concluding "[a] state court filing after the federal habeas filing deadline does not revive it"); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Therefore, the instant federal habeas corpus petition was not timely filed and must be denied.

### A. *Factual Predicate that Could Not Have Been Discovered With Due Diligence*

Petitioner argues that his petition is not untimely filed because the one-year limitations period should run from the date upon which the facts supporting his actual innocence claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D). Petitioner alleges that co-defendant Smallwood filed an affidavit on December 16, 2005, in which he attests that Petitioner had no part in planning or committing the robbery and is innocent of the crimes (Doc. No. 9-3, Exhibit C). Petitioner states that he could not have learned of Smallwood's "recantation" until December 16, 2005, because Smallwood was not willing to come forward earlier and could not be compelled to testify at Petitioner's trial because his charges were still pending (Doc. No. 7 at 37).

The Court agrees that section 2244(d)(1)(D) grants a movant one year from the discovery of new exculpatory evidence in which to challenge their conviction in a federal

6

habeas proceeding. *Scarlett v. Sec'y, Dep't of Corr.*, 404 F. App'x 394, 400 (11th Cir. 2010) (citing *Brown v. Sec'y for Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008)). However, the Court disagrees that the factual predicate for Petitioner's actual innocence claim could not have been discovered until December 16, 2005. Mere allegations that the applicant did not actually know the facts underlying a claim is insufficient to show due diligence. *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997); *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), *vacated on other grounds*, 130 S. Ct. 3491 (2010) (vacating and remanding for consideration of whether the petitioner was entitled to equitable tolling of the limitations period pursuant to *Holland v. Florida*, 130 S. Ct. 2549 (2010)). The inquiry is "whether reasonable investigation . . . would have uncovered the facts the applicant alleges are 'new discovered.'" *Boshears*, 110 F.3d at 1540 (citation omitted). Federal courts are to make this "determination on a case-by-case basis and consider whether, under the circumstances presented, the petitioner should have been expected to take actions which would have led him to the information." *Frederick v. McDonough*, No. 06-80278-CIV, 2010 WL 3769436, at *6 (S.D. Fla. May 6, 2010).

Petitioner could have discovered this "new" evidence if he had undertaken a reasonable investigation. Petitioner was aware at the time of trial that he did not commit the offenses and that allegedly Smallwood, Stafford, Fisher, and Chenault had committed the offenses. Although Smallwood may not have been compelled to testified at trial, Petitioner did use the defense at trial that he did not commit the offenses and was only an accessory after-the-fact. The Court questions whether Smallwood's subsequent willingness

7

to admit that Petitioner had no involvement in the planning of the robbery, which led to the murder, can serve to make the evidence "new" such that it could not have been discovered and presented within one year from Smallwood's conviction.

Furthermore, Smallwood was sentenced on March 3, 2000, and his conviction was affirmed on appeal on January 9, 2001. *See Smallwood v. State*, 780 So. 2d 85 (Fla. 5th DCA 2001) (unpublished *per curiam* affirmance). Petitioner has not demonstrated why he could not have investigated and obtained Smallwood's affidavit by February 12, 2002, the end of Petitioner's the one-year limitations period.[7] Although this Court agrees with Petitioner's contention that the Florida Department of Corrections rules prohibit inmates from corresponding with each other, Petitioner had someone outside of prison contact Smallwood in 2005. Petitioner has not shown why he could not have had someone outside of prison contact Smallwood at any time prior to February 12, 2002. Instead, Petitioner waited more than three years after Smallwood's conviction became final to attempt to speak with him. The factual predicate of Petitioner's claim could have been discovered before the limitations period expired on February 12, 2002.

To the extent Petitioner alleges that he did not know anyone outside of prison who could contact Smallwood before December 2005, the Court notes that Petitioner was

---

[7]While it seems that Petitioner could have discovered Smallwood's statement that Petitioner was not involved in the planning of the robbery and murder within one year of Smallwood's conviction in 2000, this Court will give Petitioner the benefit of Smallwood's appeal period and will run the one-year period from the date Smallwood's conviction became final on direct appeal. This one-year period was within Petitioner's original one-year period for filing a federal habeas petition.

represented by counsel in his first Rule 3.850 proceeding. This post-conviction motion was filed on July 18, 2002, and denied on May 8, 2003. Additionally, Petitioner was represented on appeal, and the Fifth District Court of Appeal affirmed on January 27, 2004. The Supreme Court of the United States denied a petition for writ of certiorari on October 4, 2004. Petitioner has not demonstrated why he could not have contacted Smallwood through counsel by October 4, 2004. Instead Petitioner waited more than one year after this date to contact Smallwood in December 2005. Petitioner then waited almost one more year to file a second Rule 3.850 motion in the state court. The Court concludes that the factual predicate of Petitioner's newly discovered evidence claim could have been discovered before October 4, 2004, and as such, his untimely petition will not be excused.

B.      *Actual Innocence*

Alternatively, Petitioner argues that the one-year limitations period should not bar his claim because he is actually innocent. For purposes of this discussion, the Court will assume, without deciding, that a showing of actual innocence is sufficient to relieve habeas petitioners from the burdens imposed by § 2244(d).[8] "An actual-innocence claim must be supported 'with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'" *Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 530-31 (11th Cir. 2009) (quoting

---

[8]In *Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000), the Eleventh Circuit Court of Appeals declined to decide whether there is an actual innocence exception to the time limitation of § 2244(d). Instead, the court stated that "the factual issue of whether the petitioner can make a showing of actual innocence should be first addressed . . . ."

*Schlup v. Delo*, 513 U.S. 298, 324 (1995)). To satisfy the "'threshold showing of innocence' justifying 'a review of the merits of the constitutional claims,' the new evidence must raise 'sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial.'" *Id.* at 531 (quoting *Schlup*, 513 U.S. at 317). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id*. (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

In the present case, Petitioner does not support his allegation of innocence with sufficient reliable evidence to undermine the Court's confidence in the outcome of his criminal proceedings. *See Schlup*, 513 U.S. at 316. In support of his claim of actual innocence, Petitioner relies on the December 16, 2005 affidavit of Smallwood. Smallwood attests that he was present during the planning of the robbery along with Stafford and Chenault (Doc. No. 9-3 at 1). Smallwood attests that Fisher was also involved in the planning of the crimes, in that Fisher decided that they should try to steal a car in the parking lot of a bar named "Suzanne's" because the vehicle belonged to a drug dealer and would have drugs and money inside. *Id.* Smallwood also attests that Fisher indicated there was a safe inside the office of Suzanne's and because it was almost closing time, they could steal the safe, which would have more money and drugs inside. *Id.* Smallwood attests that Fisher drew a map indicating where the safe was located, and Stafford gave the men "FBI" and "DEA" hats to wear. *Id.* Smallwood attests that Gilding stated he "didn't think this was a good idea." *Id.* Smallwood attests that he wishes to correct an injustice that occurred in Petitioner's case due to Stafford and Fisher's false testimony at trial. *Id.*

10

at 2.

After review of the evidence, the Court concludes that Smallwood's affidavit is not reliable. Smallwood waited more than eight years after the offenses were committed to come forward and attest that Petitioner did not plan the robbery. *See, e.g., Milton*, 347 F. App'x at 531-32 (noting that reliability of affidavits may be called into question by substantial delay in submission of affidavits from time of offenses); *see also Schlup*, 513 U.S. at 332 (noting that "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence"). Furthermore, Smallwood's affidavit substantially conflicts with his original statement to police. In that statement, Smallwood told police that he and Chenault met up with Stafford and two "white guys," later identified as Petitioner and Fisher (App. N, Exhibit 13 at 134-36). Smallwood stated that Petitioner and Fisher told them that there were people at a restaurant named Suzanne's who had an undetermined amount of cash. *Id.* at 136-37, 140. Petitioner described the people they were to look for and the clothing they were wearing. *Id.* at 138. Petitioner and Fisher also described to the other men the layout of the restaurant. *Id.* at 141. They were to look for a man named "Miguel," and they were instructed to take his money and drugs. *Id.* at 142. Petitioner and Fisher explained that the drugs and money were located in the back room of the restaurant. *Id.* at 142-43.

Smallwood told police that Stafford was not involved in the planning of the robbery. *Id.* at 146. Smallwood stated that he, Stafford, and Chenault sat in the vehicle while Petitioner and Fisher explained the plan to commit the robbery. *Id.* at 146-47. The men also

11

planned to take money and firearms from a black Lincoln car that was parked in the parking lot. *Id.* at 154. Smallwood then reiterated that although all the men helped in planning the robbery, Petitioner and Fisher originally planned the crime. *Id.* at 158. The Court finds that Smallwood's affidavit is not trustworthy and would not raise sufficient doubt about Petitioner's guilt because if Smallwood testified similar to his affidavit, his testimony and credibility would be impeached with his prior statement to police in which he states that Petitioner and Fisher planned the robbery. Smallwood's affidavit does not show that Petitioner is factually innocent of the crimes, but merely goes to the legal sufficiency of Petitioner's convictions. Thus, for these reasons the Court determines that the evidence relied on by Petitioner to support his actual innocence claim is not reliable.

Additionally, the Court notes that there was testimony at trial that corroborates Smallwood's initial statement to police that Petitioner did help plan the robbery. Janea Sharp ("Sharp") testified that she was working at Suzanne's when the crimes were committed (App. D at 559-61). Sharp observed Petitioner and Fisher enter Suzanne's on the night the crimes were committed shortly before the robbery began. *Id.* at 562. Petitioner and Fisher spoke with Miguel Blanco and left after fifteen minutes. *Id.* at 563-64. Stafford testified that Petitioner had previously purchased DEA and FBI hats used in the commission of the crimes when he and Petitioner visited New Orleans. *Id.* at 635. Stafford told the jury that the day before the crimes were committed, Petitioner was looking for people who would commit an "assault" for him because a person had not paid him for the counterfeit identification he made. *Id.* at 637-39. Stafford spoke to Smallwood and

12

Chenault on Petitioner's behalf and explained that they were to assault a man, take his keys, steal a white Lincoln vehicle, and drive it around the corner and remove its contents. *Id.* at 648. Stafford said that Petitioner had planned this crime with none of his help. *Id.* at 649.

The night the crimes were committed Stafford drove Smallwood and Chenault to the parking lot of the Post Time Lounge, where they met Petitioner, who arrived in a van with Fisher. *Id.* at 658-60. Stafford was not present when Petitioner spoke with Smallwood and Chenault. *Id.* at 663. Stafford testified that Smallwood and Chenault were to be looking for drugs and money that several men kept in their cars. *Id.* at 674. Petitioner wanted the money and told Smallwood and Chenault they could keep the drugs. *Id.* Stafford was also impeached with prior statements in which he had lied. *Id.* at 773-792.

During trial, Petitioner moved for a mistrial, arguing that Stafford had lied under oath. *Id.* at 701.[9] The state attorney asserted that it was not knowingly allowing Stafford to commit perjury. *Id.* at 705. Defense counsel specifically discussed whether Stafford lied about his own involvement in the crime and whether he had provided the firearm and knife used in the commission of the offenses. *Id.* at 718. The State asserted that Stafford's testimony was not materially different from the statement he made to police or the testimony or statement he made in his own case. *Id.* at 720-21. The State argued that Stafford had merely changed some of the details concerning his own participation and had

---

[9]Petitioner alleges that the State moved to withdraw Stafford's plea in his criminal case due to the fact that Stafford gave a conflicting statement which indicated that he lied under oath, and the trial court denied the motion (Doc. No. 10-4).

13

not changed his statement with regard to Fisher and Petitioner's participation in the crime. *Id.* at 721. After lengthy argument and hearing Fisher's testimony, the trial court denied Petitioner's motion for mistrial and allowed Stafford's testimony (App. E). Although the credibility of Stafford was questioned, it was in regard to Stafford's own involvement in the crimes and not regarding Petitioner's involvement.

Fisher testified that the night the crimes were committed he and Petitioner went to Suzanne's around 11:30 p.m. because Petitioner had stated that they "needed" to go there (App. E at 903). Petitioner made a couple of phone calls while they were there and told Fisher that they needed to go to the Post Time Lounge parking lot to drop something off to Stafford. *Id.* They left Suzanne's and drove to the Post Time Lounge where they met Stafford and two other men. *Id.* at 904, 906. Fisher did not know the two men with Stafford, who were later identified as Smallwood and Chenault. *Id.* at 907.

Fisher drove his van out of the parking lot because Stafford had said they needed to "get out" of there. *Id.* at 909. As Fisher drove by Suzanne's, Petitioner indicated that one of the vehicles in the parking lot was owned by a person named Derek and the other was owned by Miguel. *Id.* Petitioner directed Fisher to drive near the high school and he pointed down the street and told the Smallwood and Chenault "this is where you take the cars and Mike will be waiting when you get there." *Id.* at 911. Petitioner also told them to take everything out of the cars and to throw a "gas bomb" into the cars. *Id.* at 912. Petitioner told Smallwood and Chenault that they wanted to look for a man named Tom who would show them where "everything" was located in the restaurant. *Id.* at 913.

14

Petitioner instructed the men to take everything from the people inside including their jewelry and money. *Id.* at 916. Petitioner stated that there should be two or three thousand dollars inside, along with cocaine. *Id.* at 916-17.

Kevin Billings, United States Secret Service Special Agent, testified that when Petitioner was located and arrested, several books regarding changing one's identity were found in his possession (App. E at 855-61, 881). Charles Robert Brown, owner of the U-Spy store in Altamonte Springs, Florida, testified that he sells "spy products" and turned over the original receipts from when Petitioner made purchases at his store. *Id.* at 874-76. Moreover, Marilyn Stafford testified that Petitioner obtained a passport and had it mailed to her house after the crimes were committed and the men were arrested. *Id.* at 819-20. Petitioner's actions after the crimes were committed tend to indicate his guilt, and coupled with Stafford and Fisher's testimony, the Court finds that the new evidence does not raise sufficient doubt about Petitioner's guilt such that it undermines the Court's confidence in the result of the trial. Petitioner has not shown that this new evidence could not have been discovered earlier with due diligence or that he is actually innocent. Thus, Petitioner's untimely petition will not be excused.

Any of Petitioner's allegations that attempt to excuse his failure to file the instant petition within the one-year period of limitation and that are not specifically addressed herein have been found to be without merit.

## III. *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the

Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus filed by Douglas Gilding (Doc. Nos. 7 & 11) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 22nd day of May, 2012.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 5/22
Counsel of Record
Douglas Gilding